for stopping your honours case left two dash eighteen zero one seven zero the people of the state of Illinois Petitioner Appellant, D.J. Posey Hedges, Respondent of Appalachian, arguing on behalf of the Petitioner Appellant, Mr. Ivan O'Connor Taylor, arguing on behalf of the Respondent of Appalachia, Mr. Jerry R. Silver. Thank you. On behalf of the appellant you may proceed. May it please the court. My name is Ivan Oliver Taylor, Jr. I'm on behalf of the people in this case. People argue that the trial court was incorrect to grant the minor's motion to suppress evidence as to both statements. The statements made to school officials at the high school itself and statements made to Officer Frey at the police station. Let me ask you, this is a threshold question. The act itself does not define the term public official or employee, does it? That's correct. The act does not define those two terms. So as we look at the statute as it reads here, it says, talks about custodial interrogation of a minor by a law enforcement officer, state's attorney, juvenile officer, and then it goes on to say other public official or employee. Since law enforcement officer is already specifically named, what would be the purpose of adding public official or employee if it didn't apply to them generally? The purpose of that phrase, other public official or public employee, is just to encompass other individuals who are in a similar situation as the law enforcement officer but not necessarily titled as law enforcement. So give me an example of a similar situation. For example, this individual who's acting as an agent of the police, as this court has determined in People v. Pankhurst, for a person acting as an agent of the police, they are also subject to all the limitations that a police officer is subject to. You're right. I mean, that's what the case stands for, but are you suggesting this is intended to be a codification of Pankhurst? I can't say – the people cannot say specifically that this amendment was made specifically to codify Pankhurst, but it does reflect what Pankhurst stood for. The people cannot find any evidence to say that the purpose of this legislation by the legislature was to codify Pankhurst. What is the definition of a custodial interrogation? I mean, does that – is that important in determining, regardless of who is doing the questioning, is the term custodial interrogation important here? It is important. The definition – that definition is actually within Section 5-401 – 5-401.5. A custodial interrogation is important for the purpose of knowing that this is the first part of – that's the first triggering part of this act. If there's no custodial interrogation, then it doesn't matter who is talking to this minor. Correct. Well, a custodial interrogation has historically been an interrogation at a police department, correct? In general – in a general sense. There may be other isolated instances, but generally, it's an interrogation at a police department. People believe that is correct. Historically, custodial interrogation has taken place at police departments. Now, does the statute change that by virtue of referring to public officials or employees? No, because the statute does define custodial interrogation. It doesn't even limit to police department, only just when one is in custody and being questioned by an individual. However, just by adding the phrase other public – other public official or employee doesn't change the custodial interrogation. Mr. Taylor, you invoked the doctrine of the justum generis in this case. How does that apply here? This is to help the court to determine what the lecture had – what the lecture intended in writing this phrase other public official employee. How does that help us interpret what the legislature intended? How does that doctrine help us here? That doctrine is just – it tells us that when the phrase other appeals – appears after a series of specific individual descriptors, then that – the term other is read as other such like. So that tells us that when we see law enforcement, state's attorney, juvenile enforcement officer, then other such like public official or employee. That tells us or the court that it was – that other public employer official is supposed to be some individual in a similar situation as those three. I think you've adequately explained the doctrine, but let me ask you this. Do we even get to that doctrine if we find the statute's statutory language is clear and not ambiguous? How would we get to that? If the court does determine that there is no ambiguity, then no, you don't reach that doctrine. You reach that doctrine because the statute is ambiguous. So are you necessarily implying you want us to find it's ambiguous? Because if we go by the plain language, it doesn't help you, does it? The plain language may indicate that it's – the plain language does look like it's clear. The people will say that it does look like it's clear. However, statutory interpretation is not done in a vacuum. The real world still comes into play. And if you were to take those – if you were to take the language as is and just apply it to the real world, it would just collapse under its own absurdity. It's absurd. Yes. Let me ask you this. So you have the statement given by the student in the school to the dean or to somebody at the school, correct? Correct. Then you have the statement given at the police department with his mother in the interrogation room with the police. It's not videotaped, correct? That is correct. That was not videotaped. So how do we find that that statement does not violate 8-5, which requires videotaping of a juvenile statement of any felony offense? Well, one, the people first argued that the statement made by the juvenile with his mother at the police station a week after the statement he made to the school officials was not a historical interrogation. Why not? Because the juvenile was not in custody at the time. But didn't the police officer say to him at the school, okay, come on in with your mom or come on into the department to make a statement? Didn't he tell him that? He did inform the juvenile that he did wish to speak with him later on with a parent if he wanted to make a statement. But just because a police officer speaks with you does not make it a custody or a custodial interrogation. And wasn't he in a room that is typically used for interrogations? I believe it's just a room that's adjacent to the main entry of the police station. While police do use that for speaking with individuals, it's not just solely dedicated for interrogating. You made an interesting statement. I'm sorry, go ahead. You made an interesting statement that if we were to apply this as the plain language is written and find that it now applies to all public officials, the system would collapse. What did you mean by that? Well, I didn't say that it would collapse. I said that the statute would collapse on its own absurdity, not so much the system itself. But the reason I said that was that would imply that the legislator decided to write a statute that would take more precautions and protections for some minors, not other minors. Meaning public versus private? Yes, like for public officials or public employees to – public employees apply to all public employees. That would also mean school officials in public schools. However, not every student is going to be in a public school, some form of private school. So saying that minors in public schools can somehow have this little bit of extra protection that doesn't transfer to minors in private schools does seem like something the legislator would intend. In addition to that, wouldn't you say that a lot of teachers and school administrators and deans would be very surprised to wake up one morning and find out they have to give Miranda warnings when they question? Yes, that would also be something that would be very confusing for many public school teachers, officials, because since the phrase public official and public employee applies to everyone at every single level that is employed or elected by the state. Mr. Taylor, this particular statute doesn't define public official or employee, but public official is defined in a number of different statutes, correct? That's correct, yes. So why not use the definition that's found in those other statutes? As I stated in my submental brief, the people did acknowledge that there is a definition of public official and public employee that's in the Criminal Code of 2012, although the Criminal Code does state that those definitions are only within that code itself. However, the Criminal Procedure Code of 1963 does also cite 2012 for fighting definitions, and there is also an exact replica of this statute, this amendment within the Criminal Code of 1963 as well. So the people do acknowledge that there is a definition of public official and public employee that does exist within the Criminal Code, and it's the same standard definition that you all know what it means. To be blunt, it wouldn't help you get that definition in order, because it generally means if you're an employee of the state or a political subdivision or municipality, you're a public employee, which ostensibly, on the surface, would seem to apply to school administrators. Yes, on the surface, it doesn't apply. So I don't think you want us to apply that. Well, no, I don't. I will say that while that does exist, we go back to our main point of saying how that definition just cannot apply. It doesn't make sense to apply it in a real-world context. Did you have an opportunity, Mr. Taylor, to research the legislative intent or any discussion on the floor with respect to this legislation? We did some research on the legislative intent. It wasn't until about four months after the initial amendment process that this language was even added to the bill that would amend the statute. And even then, the only discussion had about this part of the amendment was just to say that they wanted to ensure that minors knew their rights. That what? That minors knew their rights, that they knew what their Miranda rights were. There was no discussion about what definitions of public employee or official were to be. Does the statute, when they discuss that, say that only if the other public official is acting as an agent of law enforcement? No, it does not say that. But then, because the statute is ambiguous, because since the typical terms cannot apply without being absurd, then the statute is ambiguous. Because it's ambiguous, we can then go to other techniques. Right. Yes. Go beyond the plain language if it's ambiguous. Correct. No, I'm going to go back to the police department, and I hate to keep peppering you with this, but I'm going to add two different statements. And as the defense is talking about statement at the school, and I'm not even going to talk about that now. I'm talking about the statement at the police department. When he went in, was he booked? I think he was booked during that process, yes. Right. Before or after the statement? I believe it was after the statement that the booking occurred. So wouldn't a reasonable person in his position consider himself to be in custody? I mean, if you look at the totality of the circumstances, would it be unreasonable for him to believe that he was in custody? Yes, it would be unreasonable for him to believe he was in custody. Why? He was invited to the police station at a much later date. Much later? It was a week later. It wasn't, like, the same day. It wasn't the next day. He had a week to come by the police station. He brought his mother with him. They did. The time that he got to the police station was less than an hour. Part of that was because Officer Frey asked if the mother wanted a translator, and she agreed, so we had to wait for an officer to be a translator for her. Right. I mean, weren't they asking, weren't they eliciting incriminating responses from him? Even if an officer was trying to elicit an incriminating response, it doesn't mean he's necessarily in custody because the total interrogations is two halves, the custody half and the interrogation half. Right, and as I said before, he was put in this room, this interview room, and I think the police officer, if I recall the transcript correctly, indicated that this was a room that they used for other purposes, but also he said they used it for interrogations, didn't he? Yes, he did say it was used for interrogations, but it was not one sold for interrogations. I believe he mentioned using it also for eyewitness statements as well. Thank you. Mr. Taylor, he did come to the police station a week later, and that was of his own accord. He... Let me ask it this way. Did the detective tell him date and time to show up? I'm not recalling the exact record, but Officer Frey specified a date or time. I do recall Officer Frey saying that they talked about what time he should come by the police station, but I'm not sure Officer Frey mandated a particular date or time to see him. Okay. The room that they used for the interview, was the door to that room open or closed during the time of the interview? During the interview itself, that door was closed just for privacy purposes, but I believe it's also unlocked. Okay. Thank you. Any more questions, Your Honor? Anything further, Mr. Taylor? The people at request to support to reverse the trial course granting the motion to press Evans as the school officials are not other political employer officials, according to the statute, as other should be other such like, as referring to law enforcement state's attorneys and juvenile enforcement. Also, the statement made to Officer Frey at the police station was not a custody. Even this court would have believed it wasn't custody. Can I finish, please? Yes, please. Even this court would have believed it wasn't custody. The statement was made voluntarily. Thank you. All right. Thank you, Mr. Taylor. We'll have the opportunity to address the court again at the rebuttal. Thank you. Ms. Silver, and I'll be at the rebuttal. Good morning, Your Honor's Counselor. May it please the Court, I am Sherry Silver, and I represent Jose A. in this appeal. Just to address some of the things that the Court was asking Mr. Taylor, first off, as to the definition of the public official and employee, if this Court were to find that going on the state's argument, if this Court were to find that it refers only to other people who are in law enforcement, you'd have a redundancy. They're pretty much defined there. Law enforcement, juvenile officers, state's attorneys, that's law enforcement, and I can think of no other person in the law enforcement field that would be included in that. And to that extent, it's not a codification of Pankhurst. Pankhurst said, Pankhurst told Miranda that it had to be a custodial interrogation initiated by law enforcement in a custodial setting, all of what Miranda taught. This flips it. This statute flips it, and it broadens the protections for juveniles. And that's what the purpose of this statute was. Based on the legislative history, and Your Honor brought that up, based on the legislative history that Senator Van Pelt initially was saying, the reason for the amendment to this statute was to protect the juveniles. But wasn't Van Pelt trying to get, he was trying to get, from my reading of the legislative intent, Van Pelt was trying to get videotaping of every confession of a juvenile, whether it is a misdemeanor or a felony. And he, and I think it was the prosecutors, the state prosecutors said, no, no, no, that's too much. So then what they did was they amended it to under 14, I think it was, everything is videotaped, and then after that, felonies were videotaped, correct? We're going way back in history, yes. That was what Van Pelt was looking to do. So Van Pelt's intent was not so much saying I want every person who ever questions a kid to be videotaped. He said, and in that legislation that you said I went way back on, you're talking about a custodial interrogation. And then if you want to go way back, you go to then-Senator Obama, who sponsored the first legislation which was videotaping of homicides. Exactly. It was aimed strictly at homicides. And they talked about custodial interrogation. The same term, custodial interrogation, they talk about in the legislation you're talking about. So how is it any different of a definition of custodial interrogation from when then-Senator Obama brought it up to when they brought it up in this legislation? I think you need to look at the entire statute. You have to look at what the definition is within the statute for custodial interrogation versus place of detention. They've separated it. The custodial interrogation isn't any interrogation. It doesn't matter where it takes place as long as it's the reasonable person standard, that the reasonable person in that kid's position would consider himself or herself to be in custody, and the questioning is likely to elicit incriminating statements. That's what custodial interrogation is. And it doesn't matter where it takes place. Section B of 401.5 is the one that requires the videotaping. And that is strictly in a place of detention. And it says custodial interrogation, again, custodial interrogation at a police station or other place of detention based on that definition. Right. So if you're going to interrogate a minor, you have to videotape it, correct? If you're in a police station. Only in a place of detention, police station or other place of detention, and place of detention is defined as a building or police station. So then it's okay for somebody who is a public official to question a minor as long as they're not in a police station. If they give them their marine rights. Yes. But it's still going to be, in your opinion, it's a custodial interrogation. It is. Because the statute says if you're going to have a custodial interrogation, it has to be videotaped. No. No, I'm going to disagree with that, Your Honor. The videotaping is Section B. Your Honor referred to it as Section A-5 before, and it's not. There's nothing in A-5 that requires videotaping. Absolutely nothing. The only videotaping comes in in Section B, which goes to that statement that Jose made at the police station. Totally wrong. That should have been videotaped. There's no question. It was custodial. He was there, as I think it was Justice Spence, he was there to be booked. He was in a closed room. Yes, the door was unlocked, but Officer Frey was there with a gun on him. He had his cuffs on him. There was fingerprint equipment in the room. Did he just show up at that date and time? No. Or did Officer Frey tell him, hey, I want you here Friday at 930? He didn't tell him the exact day and time. Excuse me. During the questioning at the school, Jose had made a statement, and then Officer Frey came in and said, I'm sorry, Jose was told that somebody would reach out to him to set it up. And at that moment, Frey came in and said, okay, you need to call us and set up a date. So that was when a date was set, when somebody called, I should say, not at that meeting. So here is when somebody called to set up a date and time. Okay, so that's videotaping. That's videotaping. Didn't happen. That's videotaping. Didn't happen. That should be Judge Morrison, however you pronounce his name, was absolutely correct. Okay. But going back to the statement at the school, there's no requirement that statements conducted by public officials, and we're saying public official applies to the school officials here, and we'll get into that. But what do they have to do? I'm sorry? So what do they have to do? They can't videotape it. So what are you saying? They have to give them Miranda rights? They have to read this abbreviated version of Miranda? It's not so abbreviated. I shouldn't say that. They read the Miranda rights as in A5, and they add those two questions. Do you want to talk to me, and do you want a lawyer? Ms. Silver, let me ask you a pointed question. Were you to accede to your construction of the statute, which would require school administrators, deans, to give Miranda, I think you'd have to agree that would be a pretty significant shift in what currently exists today to put those responsibilities on teachers. My question is, would the legislature have engaged in such a seismic shift without spelling it out, having us draw it out by implication? It's not clear, is it, in plain reading of the statute, that it was intended to apply, you know, teachers' responsibilities? It's a little bit vague. Why would they do this by implication? Why wouldn't they define public employees for us if that was their intent? Well, as Mr. Taylor pointed out, public official employee is defined in the criminal code. But not in this statute. Not in this statute, but by reference. And there's nothing ambiguous about those terms. Mr. Taylor cited Black's Law Dictionary. A public official is you. You're either elected or appointed to the bench. You're public officials. Would everybody in this building that works for that public court have to give Miranda warnings if they wanted to talk to someone? If the purpose of the custodial interrogation is to elicit incriminating statements and a reasonable person would think that they're in custody, then yes. But I don't know that this court would be in a position to be doing that. And I, as a civil servant, a public employee, I don't know that I would do that for a client anyhow. But then we go to Mr. Taylor's position that it could extend to the absurd. And I will agree to the absurd. It could extend to the absurd. If you go to the extent that a kid's on a bus and he's causing a ruckus and the bus driver says, you're not getting off this bus until you tell me what to do. But we'll need to give Miranda warnings first. Right, right, right. Really? I think that would be a little absurd. I think my interpretation of this statute is that it is public officials or other employees who have some sort of authority similar to that of a law enforcement official, similar to that of a state's attorney. Somebody who can, who is in a position where their authority is going to make a difference. A bus driver, notwithstanding that they think they run the world for schools, they don't run the world. The deans do. The superintendents do. The principals do. And those are the people who, by statute, if a criminal offense is committed on school property, they are required to contact the police. They are the ones, not bus drivers, not lunchroom ladies, not janitors. So the statute says if they're acting as an agent of law enforcement. No, the statute does not say acting as an agent. Well, that's Pankhurst. If you're acting as an agent. That's Pankhurst. That's not the statute. And that's what we're saying. This is not a codification of Pankhurst. This is a flip of Pankhurst. Well, this is extending the protection, extending the Fifth Amendment protections. And it is a balancing act. It's not a seismic shift. I would not. Teachers wouldn't be surprised to wake up in the morning and find out they're going to get more random warnings? They wouldn't be surprised by this? And here you go. You're going to invent a new one. It's an important one. Right. I don't, I'm going to disagree. It's not a seismic shift. It is a shift. There's already been a shift in Fourth Amendment purposes. This is just a shift in Fifth Amendment purposes. It's not a complete flip. This is not an onerous burden for a superintendent of a school or a dean of students to have this on a little card on his desk. And if he knows that he has to question this kid for the purpose of the commission of some sort of criminal offense on school grounds that is ultimately going to go to the criminal court, there's nothing wrong with a school official shifting his in loco parentis duties to give this Miranda warning. So he has to determine if it's ultimately something that might go to the criminal courts. So now we have to have a school official kind of educated in the criminal justice system. Not necessarily. If you've got a kid who's got a gun, clearly that's going to, that's a pretty straightforward one. If you've got a kid who's selling drugs, possibly. But if you've got a kid who's just done something that clearly is just a school infraction, then this doesn't apply. This doesn't apply. Well, that wouldn't go to juvenile court anyway. Exactly. That's the point. It doesn't go to juvenile court. What if, okay, what if you have the county painter who has seasonal employees, high school kids, and notices something's missing and says, you're not going anywhere until I find out who stole my paintbrush, whatever. And he's clearly going to follow through with it if the little, you know what, stole his equipment. Yeah, I can't say what I would say. I mean, wouldn't it put regular employees of the school district or of the county or of the park district, the library, whatever, wouldn't it put all of them in that category? That's what I said. I think there's a spectrum. You have the end of the spectrum with the superintendents, deans of students, principals. Those are the people with the authority that by statute are required to report criminal offenses. Then you've got teachers that are probably on the borderline. I have to admit that in all honesty. So we're supposed to ask them to figure out where they are on the spectrum? No, I think that's the owners. I think under the circumstances of this case, it is pretty clear that the dean of students and the principal, or whatever her position was, Dr. Pickul, they are the people with the authority that had to make this decision. They are the people of authority who under this statute should have said to him, the Miranda ones, as written here, and just said, do you want to talk to me? Instead, they just went in and started questioning him. They searched his bag. They did all that kind of stuff. Importantly, the thing to remember also about this case is that Detective Frey was called in at the very, very start, the very first thing in the morning when that other student presented in an intoxicated condition. He wasn't even on campus, was he? He was not on campus, but he was called to bring in a breathalyzer. I don't know how often breathalyzers are used in a school setting, but it raises a question. I'm looking back at my days in high school. I grew up in the 70s. A lot of us were intoxicated for various reasons. Too much information. But if you were in an intoxicated condition, even today, you're pretty obviously under the influence of something, whether it's alcohol, drugs, whatever. You can't participate in school. You're not going to concentrate. Go home. Get out of here. But to bring in a breathalyzer, what's the purpose of that? What are they going to do with a number that's going to show up on a breathalyzer test if not proceed with some sort of criminal action? It's clear from the start that's where this was going. Let me ask you this question. If, in fact, the legislature intended this to apply the way you suggested, then why didn't they define the term public employee or public official as they have in other statutes? Why did they not define it if it was so clear? I have to be really honest. This is the worst written statute I have come across. There's words that are clearly missing. There should be an unless in here. There's all sorts of things that are problems with this. And it's going to be up to this Court and any other Court interpreting this to draw those lines. But should we fill in the gaps? Is it our intent as members of the judiciary to fill in the gaps in the statute to reach a certain result? Is that even permissible? No, but you can interpret statutes. And that's what you do. You interpret the statute. And in this case, public official or employee, as defined by Mr. Taylor in his own brief, would encompass the school principal, dean, and superintendent if the superintendent participated. Just one second here. So is your position, just as far as custodial interrogation, the first statement, in the dean's office or whatever that little suite of offices was, that that was custodial? Yes. And if you look at the circumstances, if I can just go into that really quickly. If you look at the circumstances, first of all, he was – Jose had left the campus. He was a high school student taking classes at the college. The two deans were waiting for him at the bus stop. And Ayala's rule works. They retrieved him from the bus. They escorted him back to their offices. He was not permitted to leave. The design of the offices was such that he went – depending on whose testimony you're reading. Before I said one thing, Ayala was wishy-washy. He went into what was the suspension detention room. There was no separate exit from that room. To get out of that room, you had to go past the deans, through their offices. That's detention. Added to that, though, was the time of day. We don't know what time of day school actually ended. We know that it went on a period system. He returned to school at 7th period. Frey, or Frey, however pronounced his name, said that he arrived at school at 2 o'clock, which is around the 8th period. You might guess that a school's let out at 3. I don't know. I have no idea. But he was held already for 45 minutes before Frey arrived because the period is 44 or 45 minutes long. He was already held for 44 or 45 minutes. He was held during the questioning. He was held for the additional 15 minutes that Frey went and got the surveillance tape. He was held for the time period that it took to search the backpack. All of it. He was held for the time that it took to get his payment. He was not allowed to leave that room. He was not allowed to leave the dean's office. He was not allowed to go back to school or back to the classes in school. He could have been told, go back to class. We'll call you when we're ready for you again. Then I think there would have been more of a question. But he was not permitted to leave. And he could not leave the school until he left with his parents. So this was definitely a custodial interrogation. There's no question under the definition of custodial interrogation under Section 8401.58. We're asking Your Honor to affirm Judge Morrison's findings and ruling. If there are no more questions. Thank you. Thank you very much. Thank you. Mr. Taylor, you may address the Court in the bottom. Thank you, Your Honor. There's three points I want to bring up. First of all, the minor argues that there would be a redundancy if the Court were to read other public official employee as other such like. But then the minor argues later. Then the minor argues that other public official employee should not need to come to seeing what it actually means. That that should be read as other public official employee with some authority similar to law enforcement, which is a very different change from what was previously argued by the minor in this brief. Since the minor has gone, has essentially given up the position that other public official employee should be read as is, it seems to me that that phrase is ominous. And that to, not to take into account the all-encompassing of what other public employee or public official is. It's best to read it as other such like. And it doesn't create any type of redundancy because that's where Pankhurst comes into play. Where if an individual is acting as an agent of the police, they are then other such, they are, and they're a public employer official, they're not other such like. Further, as to the changes, the Court asked about whether or not there's been any change in manner with this particular amendment. And for the legislator to make any substantive change to the common law, which Miranda is a part of, it has to be made clearly and explicitly. They can't do so by implication. And the only explicit change to the common law, the Miranda common law, is the addition of two questions that the law enforcement or other such like has to give to the minor. Which are, do you want to have a lawyer? Or do you want to talk to me? Outside of two additional questions, it's just Miranda. Unless there are any more questions? No. The people asked this Court to refer to the trial court after both statements. Thank you. On behalf of the Court, I'd like to thank both counsel for the quality of their arguments in this very interesting case this morning. The matter will, of course, be taken under advisement. And a written decision on this matter will issue in due course.